UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>TODD JAMES KING,<br><br>　　　　　　Defendant. | CR. 15-50050-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant Todd King, appearing *pro se*, filed a motion for compassionate release together with a brief summary of his current medical conditions. (Dockets 52 & 52-1)).   Pursuant to the May 1, 2020, Standing Order 20-06 the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. King's motion.   (Dockets 55-59, 59-1 through 59-4, 60-61 & 61-1 through 61-2).   For the reasons stated below, defendant's motion is granted.

**STANDING ORDER 20-06**

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions

---

[1] See https://www.sdd.uscourts.gov/so2006 ("SO 20-06").

under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. ¶ 1. The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already. These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, "within two business days of filing all motions for compassionate release[,]" the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. at p. 2 ¶ 4. Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

2

  c. Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

  d. Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id. The standing order contains provisions for sharing of critical information between the FPD, the U.S. Attorney, the Probation Office and the court. Id. ¶ 5. The priority of briefing is set according to the different categories of assignment of a defendant. Id. ¶¶ 6-8.

## FACTUAL BACKGROUND

On November 12, 2015, defendant Todd King was sentenced to a term of imprisonment of 120 months for conspiracy to distribute a controlled substance, methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Docket 48). This sentence was the statutory minimum term of imprisonment mandated by 21 U.S.C. § 841(b)(1)(A). But for this mandatory minimum sentence, according to Mr. King's presentence report ("PSR"), "[b]ased on a total offense level of 17 and a criminal history category of II, the guideline imprisonment range [would have been] 87 months to 108 months." (Docket 42 ¶ 74).

Mr. King is currently an inmate at the Federal Medical Center in Rochester, Minnesota. (Docket 52 at p. 5). The parties agree and the BOP

3

Inmate Locator confirms Mr. King has a scheduled release date of December 17, 2023.  (Dockets 59 at p. 1; 60 at p. 1; and https://www.bop.gov/inmateloc/ (last accessed October 15, 2020).  As of this date, Mr. King had served 57.5 percent of his sentence and under his current status in the BOP, Mr. King's home detention eligibility date is June, 17, 2023.  (Docket 56 at pp. 647-48).  Mr. King is 56 years old.  Id. at p. 647

Mr. King's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his personal health during the COVID-19 pandemic.  (Docket 52).  Mr. King suffers from:

- Type 2 diabetes.  (Docket 55 at p. 1);

- Morbid obesity . . . [with a body mass index as of June 30, 2020, of] 65.7.  His current weight is 458 pounds.  Id. at pp. 1, 23 & 33;

- Parkinson's disease . . . with tremor[s] that [are] continuous both at rest and with action.  Id. at p. 1;

- Sleep apnea . . . [u]ses Bipap and oxygen with the Bipap.  Id.;

- Other sleep disorders . . . REM sleep behavior disorder.  Id.;

- [H]ypertension.  Id. at p. 2;

- Emphysema.  Id.; and

- [Other physical health conditions].  Id. at pp. 2-3.

Mr. King's chronic conditions are reaffirmed throughout his medical records.  See Dockets 56-58.

4

Addressing the 18 U.S.C. § 3553(a) factors, Mr. King contends his crime of conviction is a "non-violent offense," for which he "accepted responsibility and admitted his offense in a timely fashion." (Docket 59 at p. 19). He argues that but for the mandatory minimum "[a] sentence of time served is close to the amount of time [he] would have served, had he been sentenced within the advisory guideline range." Id. Mr. King offers that he "is currently enrolled in a drug abuse program and educational courses . . . [but] [d]ue to his tremors from . . . Parkinson's disease [he] has been unable to complete other educational courses." Id. (referencing Dockets 56 at pp. 649 & 651 and 59-4).

Mr. King represents that if released from custody he would have "a safe and stable place to stay . . . with his sister . . . in LaFayette, Minnesota." Id. at p. 20. He submits "[h]is sister will assist with finances and [his] medical needs." Id. Family members will assist Mr. King with his doctors' appointments and help "monitor his medical care." Id. Based on his "criminal history and numerous serious health concerns" Mr. King argues "he does not present a danger to the community." Id. (referencing U.S.S.G. § 1B1.13(2)).

## MR. KING'S CLASSIFICATION

On July 23, 2020, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion. (Docket 53). They jointly "agree [Mr. King's] case should be categorized as A High Priority case." Id.

5

## ANALYSIS

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court finds Mr. King exhausted the administrative relief provision contemplated by § 3582(c)(1)(A). While the motion for compassionate release was pending in federal court, on July 17, 2020, Warden S. Kallis, denied Mr. King's request for a reduction of sentence or release to home confinement.[2] (Docket 61-1). The warden's conclusion was based on the standard for "extraordinary or compelling reasons" delineated in "Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for

---

[2]On March 26, 2020, United States Attorney General William Barr issued a memorandum to the Director of Bureau Prisons captioned "Prioritization of Home Confinement As Appropriate In Response to COVID-19 Pandemic." https://www.bop.gov/coronavirus/ (Last visited August 24, 2020). Warden Kallis' decision did not mention the memorandum or the option of home confinement. (Docket 61-1).

Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)[.]" Id. The factors in Program Statement 5050.50 are the same as those stated in the United States Sentencing Guidelines ("U.S.S.G."). Compare (Docket 61-1 and U.S.S.G. § 1B.1.13 cmt.1(A)-(C)). However, the court's consideration of extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i) is not tied to U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) (U.S.S.G. 2018) or the COVID-19 home confinement provisions of the CARES Act, Pub. L. No. 116-136, Section 12003(b)(2).

Prior to the First Step Act "a court could revisit a previously-imposed sentence if the [BOP] filed a motion to reduce the sentence, and if the court concluded, based on criteria established by the U.S. Sentencing Commission, that 'extraordinary and compelling reasons' warranted a sentence reduction." United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *3 (W.D.N.Y. Apr. 20, 2020) (referencing 28 U.S.C. § 994(t) and 18 U.S.C. § 3582(c)(1)(A)). With the First Step Act, a defendant may now bring a § 3582 motion for reduction of sentence.

The phrase "extraordinary and compelling reasons" was not defined by Congress. That task was left to the United States Sentencing Commission. "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). "[P]rior to the First Step Act, the Sentencing

7

Commission established four categories of circumstances in which, in the Commission's view, 'extraordinary and compelling reasons exist.' . . . Those relate generally to: the defendant's medical condition; the defendant's age; the defendant's family circumstances; and any other reason that the BOP director determines to be extraordinary and compelling." Marks, 2020 WL 1908911, at *4 (citing U.S.S.G. § 1B1.13 cmt. n.1). These four categories "have not been updated since the [First Step Act] was enacted in [December] 2018."[3]  Id.

Some courts believe the First Step Act only allows a court to grant a compassionate release motion if the BOP would have granted the motion under the law as it existed prior to the First Step Act. See United States v. Willingham, CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) ("the Sentencing Commission, not the judiciary, determine[s] what constitutes an appropriate use of the 'compassionate release' provision.") (referencing 28 U.S.C. § 944(t)); United States v. Lynn, CRIMINAL NO. 89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 12, 2019) ("If the policy statement needs tweaking in light of Section 603(b) [of the First Step Act], that tweaking must be accomplished by the [Sentencing] Commission, not by the courts."); United States v. Shields, Case No. 12-cr-00410-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019) (there is no "authority for the proposition that the Court may disregard guidance provided by

---

[3]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two shy of the four it needs to amend the [U.S.S.G.]." Marks, 2020 WL 1908911, at *6 (references omitted).

the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments").

The United States Court of Appeals for the Second Circuit is the only court of appeals which has addressed this issue.[4]  United States v. Brooker, ___ F.3d ___ 2020 WL 5739712 (2d. Cir. September 9, 2020).  "[T]he question at the heart of this case: whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)."  Id., 2020 WL 5739712, at *5.  The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances."  Id.  The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable."  Id., 2020 WL 5739712, at *6.  "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."  Id., 2020 WL 5739712, at *7.

---

[4]The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue recently but declined to do so.  United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

9

Several district courts have not felt confined by the categories identified by the U.S.S.G.  "While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019).  "An interpretation of the old policy statement as binding on the new compassionate release procedure is likely inconsistent with the [Sentencing] Commission's statutory role."  Id.  "It is also inconsistent with the First Step Act, which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when [BOP] finds they are not appropriate."  Id. (referencing the First Step Act § 603(b) (captioned "INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE") (capitalization in original).

Because of the changes brought on by the First Step Act, "the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582."  United States v. Cantu, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019) (emphasis in original).  The Cantu court held:

> [T]he correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements "at any time," . . . —is that when a defendant brings a motion for a sentence

10

>  reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.

Id. at 352 (citing Mistretta v. United States, 488 U.S. 361, 394 (1989)).

"[T]he dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." United States v. Young, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." Id. The Young court concluded that "based on the First Step Act, [a majority of the district courts determined] they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons." Id. (referencing United States v. Maumau, Case No. 2:08-cr-758-11, 2020 WL 806121, at 2 (D. Utah Feb. 18, 2020) ("the portion of the catch-all provision that limits relief to grounds identified by the Director is inconsistent with the law. . . . [A] majority of district courts to consider the question have embraced Mr. Maumau's position."); United States v. Brown, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019) ("If the [First Step Act] is to increase the use of compassionate release, the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before

11

it. . . . Thus, the Director's prior interpretation of 'extraordinary and compelling' reasons is informative, but not dispositive.") (internal quotation marks, citations and brackets omitted); United States v. Fox, Criminal No. 2:14-cr-03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("I agree with the courts that have said that the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change."); Beck, 425 F. Supp. 3d at 579; Cantu, 2019 WL 2498923, at *4.  The Marks court agrees with the analyses of these courts.  Marks, 2020 WL 1908911, at *5.

The court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release."  Brooker, 2020 WL 5739712, at *7.  The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Mr. King argues he meets the criteria of U.S.S.G. § 1B1.13, application note 1(A)(ii).  (Docket 59 at p. 18).  Mr. King submits he "is 'suffering from a serious physical or medical condition . . . that substantially diminishes . . . [his] ability . . . to provide self-care within the environment of a correctional facility

12

and from which he . . . is not expected to recover.' " Id. (citing U.S.S.G. § 1B1.13, note 1(A)(ii)(I)). The government acknowledges this factor.

> [T]he Department of Justice has determined that, during the COVID-19 pandemic, having morbid obesity, emphysema and Type 2 diabetes mellitus, which the CDC has indicated are conditions at increased risk of severe illness due to COVID-19, present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the inmate's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic condition itself.

(Docket 60 at pp. 5-6) (referencing http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions-people-with-medical-conditions.html).

Despite the Department of Justice's declaration, the government maintains Mr. King's "ability to provide self-care is not the sole-consideration[,] . . . and that . . . a reduction [must be] consistent with the applicable policy statements issued by the Sentencing Commission." Id. at p. 6. "[C]onsidering the 3553(a) factors," the government contends Mr. King "cannot meet his burden." Id. at p. 7.

First, the government argues the offense of conviction "is a serious one[,] [and] [c]ontinued narcotics activity is considered to be a danger to the community." Id. Second, the government submits "the Court applied the [§] 3353 factors to [Mr.] King when previously fashioning the appropriate sentence and further reducing his sentence 'would not promote respect for the law, provide just punishment, afford adequate deterrence, protect the public

13

from further crimes' nor 'reflect the seriousness of his offense.' " Id. at pp. 7-8 (some internal quotation marks and brackets omitted) (citing United States v. Brink, Case No. 15-cr-78, 2020 WL 3531576, at *6 (D. Minn. Jun. 30, 2020)). Third, the government contends Mr. King "is at a medical facility where he could receive immediate medical care should he contract COVID. . . . He has not demonstrated that circumstances or his medical care would be better for him if released."  Id. at p. 8.  Fourth, the government argues that "[a]lthough there are risks in an institutional setting, BOP has taken significant measures to protect the health of inmates in its charge as to COVID-19." Id. (referencing Federal Bureau of Prisons, BOP Implementing Modified Operations, available at https://www.bop.gov/coronavirus/covid19 status.jsp).  Finally, the government asks that if Mr. King is released that his discharge from custody occur "14 days from its order to accommodate BOP's ability to quarantine Defendant prior to his release to protect the community from potential further spread." Id. at p. 10.

> In reply, Mr. King argues:
>
> While [he] shares the government's hope that the present pandemic is impermanent and that treatments and vaccines are on the horizon, this court should not risk [his] life in the interim to ensure he spends more time in prison for this offense. It is simply unnecessary.
>
> Unnecessary risk of the health and life of an individual is an extraordinary and compelling reason to grant him compassionate release. In light of the amount of time [he] has served, his conduct while in prison, the risks posed by continued incarceration, and the significant deprivation of liberty that would result from home

14

>confinement, the § 3553(a) factors would be balanced with a sentence of time served.

(Docket 61 at pp. 4-5).

Rochester FMC currently has 43 COVID-19 positive inmates and three positive staff members.  https://www.bop.gov/coronavirus/ (Last visited October 15, 2020).  With a population of 619 inmates, Rochester has conducted only 381 tests and is currently awaiting the results of 12 tests.  Id.  Mr. King is confined to a two-inmate cell.  (Docket 59-4).  As mentioned earlier in this order, the government acknowledges his medical and physical conditions substantially diminish his ability to provide self-care.  See supra at pp. 11-12.

The court finds Mr. King met his burden of proof and presented "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).  The Centers for Disease Control and Prevention ("CDC") found "adults of any age . . . are at increased risk of severe illness" from COVID-19 if they have any of the following conditions, of which Mr. King has three: "COPD [including emphysema] (chronic obstructive pulmonary disease)," "Severe Obesity (BMI> 40 kg./m)" and "Type 2 diabetes mellitus."  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity last visited October 15, 2020) (bold omitted).  Additionally, the CDC warns an adult like Mr. King "might be at an increased risk of severe illness" because of his "Hypertension or high blood pressure."  Id. (bold omitted).

15

The court generally was aware of Mr. King's health issues at the time of sentencing.  See PSR ¶¶ 61-62.  Mr. King's morbid obesity has gotten worse while in custody.   At the time of sentencing in October 2015 the defendant weighed 400 pounds and as of June 2020 he now weighs 458 pounds.  Compare PSR ¶ 61 & Docket 55 at pp. 23 & 33.   Mr. King's medication list consists of 20 prescription drugs of which he takes 12 daily, 5 to 6 over-the-counter medications, ointments and skin-care items.   (Dockets 55 at pp. 28-30 & 59 at p. 11).   Based on the court's detailed review of the extensive medical records, Mr. King's major health issues and risk factors are chronic, that is, medically speaking his conditions will only get worse over time.   These conditions put Mr. King's life at risk.   Against these findings, the court must consider if compassionate release comports with the § 3553(a) factors.

In Mr. King's case, the "nature and circumstances of the offense"— conspiracy to distribute methamphetamine—is serious.   18 U.S.C. § 3553(a)(1).   "[T]he history and characteristics of the defendant," requires the court to consider the defendant as a whole person.  Koon v. United States, 518 U.S. 81, 113 (1996).   Mr. King had a number of minor offenses including theft, alcohol related crimes and driving offenses in his younger years.   (PSR ¶¶ 31-39 & 41).   His only prior criminal conviction which added two points to his criminal history classification was a misdemeanor offense for possession of methamphetamine at age 47.   Id. ¶ 40.   Mr. King's first felony offense resulted in the present case.

Because of his health and physical limitations, Mr. King completed a limited number of educational programs while in the BOP.  (Docket 56 at p. 649 & 651).  While in custody, Mr. King maintained a number of different jobs.  Id. at p. 650.  According to the BOP records, Mr. King's disciplinary writeups have been confined to swearing, insolence, possessing an unauthorized item, failing to be in his cell at call time and, back in 2017, fighting with another inmate.  Id. at pp. 652-53.  In each instance, Mr. King lost commissary privileges, phone privileges, good conduct time, and in the instance of the 2017 fight, Mr. King was placed in disciplinary segregation for 15 days.  Id.

Setting aside consideration of the ten-year mandatory minimum sentence, Mr. King's guideline range would have been 87 to 108 months.  (18 U.S.C. § 3553(a)(2); PSR ¶ 74).  Contrary to the government's argument, the court was not permitted to consider the § 3553(a) factors for a sentence below the mandatory minimum sentence.  In the court's view the Sentencing Guidelines, without consideration of the mandatory minimum sentence, would have "reflect[ed] the seriousness of the offense, . . . promote[d] respect for the law, and . . . provide[d] just punishment for the offense . . . [and would have] afford[ed] adequate deterrence to [future] criminal conduct" by the defendant.  18 U.S.C. §§ 3553(a)(2)(A) & (B).  Considering the length of the defendant's time in prison and his behavior while incarcerated, as well as the supervised release special conditions imposed at sentencing, additional incarceration is not necessary "to protect the public from further crimes of the defendant."  Id. § 3553(a)(2)(C).

17

Mr. King's obligation to comply with the terms of supervised release would best "provide the defendant with . . . correctional treatment in the most effective manner." Id. § 3553(a)(2)(D).

Incarceration is not the only "kind[] of sentence[] available." Id. § 3553(a)(3). A noncustodial sentence will limit Mr. King's liberty interests through supervised release and he will face harsh consequences if he violates the special conditions activated upon his release from BOP custody. United States v. Gall, 374 F. Supp. 2d 758, 763 (S.D. Iowa 2005), *rev'd*, 446 F.3d 884 (8th Cir. 2006), *rev'd*, 552 U.S. 38 (2007). Those special conditions promote respect for the law, protect the public and do not constitute any approval of Mr. King's criminal conduct. Id.

The controlled substance statute mandated a mandatory minimum sentence, but this is just one factor for the court to consider. 18 U.S.C. § 3553(a)(4). At this juncture, use of the First Step Act will not create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Id. § 3553(a)(6). The court finds compassionate release is appropriate and Mr. King will not pose a danger to public.

The court does not have authority to modify the defendant's sentence to home confinement. United States v. Amarrah, Case No. 17-20464, 2020 WL 2220008, at *8 (E.D. Mich. May 7, 2020). The court does, however, retain the authority to reduce Mr. King's sentence to time served. Following his release

from custody, Mr. King will remain on supervised release for five years, subject to the standard conditions and the special conditions of supervised release imposed in the original sentence. (Docket 48 at pp. 3-4).

Arrangements are in place to transfer supervision to the District of Minnesota so Mr. King can commence his period of supervised release in that district.

Good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 52) is granted.

IT IS FURTHER ORDERD that the defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that upon his release, Mr. King shall reside at the home of his sister, Deborah Schultz, in LaFayette, Minnesota.

IT IS FURTHER ORDERED that within 72 hours of release from the custody of the BOP Mr. King must report, by telephone, 612-664-5400, to the United States Probation and Pretrial Services Office for the District of Minnesota in the United States Courthouse, 300 South Fourth Street Suite 406, Minneapolis, MN 55415-1320.

IT IS FURTHER ORDERED that Mr. King shall remain on supervised release for five years, subject to the standard conditions of supervision and the special conditions of supervision imposed in the original sentence of November 12, 2015. (Docket 48 at pp. 3-4).

IT IS FURTHER ORDERED that the United States Probation Office shall prepare an amended judgment consistent with this order.

IT IS FURTHER ORDERED that the Clerk of Court shall deliver a copy of this order to the United States Probation Office and the United States Marshals Service.

Dated October 20, 2020.

                                        BY THE COURT:

                                        /s/ *Jeffrey L. Viken*
                                        JEFFREY L. VIKEN
                                        UNITED STATES DISTRICT JUDGE